**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 22-cv-21211-BLOOM/Otazo-Reyes**

HERBER MANCILLA, individually and
on behalf of all others similarly situated,

    **Plaintiff,**

v.

GR OPCO, LLC d/b/a E11EVEN MIAMI,

    **Defendant.**

_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendant, GR OPCO, LLC d/b/a E11EVEN MIAMI ("E11EVEN"), replies to Plaintiff's Opposition to Defendant's Motion to Dismiss Class Action Complaint ("Opposition," ECF No. 16) and in further support of the Motion to Dismiss (ECF No. 12), as follows:

**Introduction**

Plaintiff originally claimed that Defendant violated the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA") by sending text messages promoting Defendant's goods and services. *See* Class Action Complaint ("Complaint"; ECF No. 1-1). Plaintiff has since voluntarily withdrawn his TCPA claim. *See* Opp. at n.1.

Plaintiff's FTSA claim fails for several reasons. First, his allegations are entirely conclusory, containing nothing more than a bare recitation of the statutory elements and lacking any supporting facts to invoke the statute. Second, the FTSA itself suffers from several constitutional defects. The statutory section at issue is unconstitutionally vague in violation of state and federal due process guarantees. The FTSA is also an impermissible content-based restriction on speech in violation of the free speech guarantees of the Florida and U.S. Constitutions. Finally, to the extent that the 2021 amendments to the FTSA essentially void an agreement that the parties entered in 2019, the statute operates as an unconstitutional impairment of the freedom to contract.

**Argument**

**I.**     **Plaintiff Fails to Allege Facts Sufficient to Support a Violation of the FTSA.**

1

As set forth in the Motion, Plaintiff primarily recites the language of the FTSA section at issue and then concludes that E11EVEN has violated it. *See* Motion at 10-11. Section 501.059(8)(a) prohibits a "telephonic sales call" that "involves an automated system for the selection or dialing of telephone numbers…." Plaintiff merely parrots the statutory hook in that section that triggers its application – the "automated system" for "selection and dialing" element. *See* Compl. ¶¶ 20, 41 (alleging that "Defendant made and/or knowingly allowed the telephone sales calls … to be made utilizing an automated system for the selection or dialing of telephone numbers" and "utilized a computer software system that automatically selected and dialed [the] telephone numbers." This falls short of the federal pleading standards. *See Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-cv-61140, 2019 WL 4737696, at *2-*3 (S.D. Fla. Sept. 27, 2019) (Bloom, J.) (dismissing TCPA Complaint that similarly "fail[ed] to sufficiently allege that [d]efendant used an ATDS to send the text messages"); *Oxford asset Mgfmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Plaintiff's Opposition to this argument is half-hearted and unpersuasive. Essentially, Plaintiff argues that the images of the text messages E11EVEN sent to Plaintiff—included within the Complaint—are themselves evidence that the texts were sent using an automated system. *See* Opp. at 3-4. Plaintiff contends, without elaboration or support, that the texts' inclusion of hyperlinks to order tickets and an opt-out instruction are "characteristics of automated messages" that fall within the ambit of the FTSA. *See id.* But, the Complaint lacks that allegation and fails to include any facts to support a conclusion or even an inference that hyperlinks and opt-out instructions somehow signify the use of an "automated system for the selection or dialing of telephone numbers." Plaintiff is stuck with the allegations included in the Complaint, and they do not support the conclusion necessary to invoke this section of the FTSA: that Defendant used an "automated system for the selection or dialing of telephone numbers."

## II.     The FTSA is Unconstitutional

### A.     The FTSA is Unconstitutionally Vague

The FTSA's concept of an "automated system" is not defined or clarified in the FTSA, its legislative history, or any other state laws. Plaintiff's various citations to cases interpreting a similar—but not identical—provision in the federal TCPA, *see* Opp. at 16-18, *exemplifies* the problem rather than solves it. Specifically, in enacting the TCPA, Congress provided a definition

for an "automated telephone dialing system" ("ATDS"): "[E]quipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Florida Legislature, by contrast, provided no definition and chose different wording. If the Florida Legislature wanted to define its "automated system" synonymously with the ATDS definition in the TCPA, it could have done so. Thus, the Opposition highlights the vagueness of the FTSA: Either the definition of "automated system" in the FTSA is synonymous with the TCPA's definition of an ATDS, or it isn't. If the terms are synonymous, the Complaint fails because the messages E11EVEN sent to Plaintiff were not sent to a randomly or sequentially generated number but were instead sent to a customer who had opted in to permit this number to receive such promotional text messages. And if the terms are *not* synonymous, then what an "automated system" is remains anyone's guess. Florida companies subject to the FTSA are left to speculate at what equipment is prohibited, guided only by the notion that it may or may not be something *different* than an ATDS under the federal statute.

Plaintiff's additional contention that E11EVEN lacks standing to assert a vagueness challenge because it allegedly violated the statute is circular, conclusory, and defective. Plaintiff contends that because E11EVEN allegedly used a "computer software system that automatically selected and dialed … telephone numbers," it falls within the prohibition against use of an "automated system." *See* Opp. at 16. Again, the Court need not accept that conclusory and factually unsupported allegation as true (*see* § 1, *supra*). Plaintiff fails to explain what an "automated system" means in the Complaint (beyond citing the vague statutory language itself), but asserts in the Opposition that it essentially includes any computer software system. *See* Opp. at 16. Plaintiff is attempting, on his own, to create an "automated system" definition that in practice would cover any text sent in any way other than 100% manually. That position results in a broad overreach that would encompass all modern phone systems, including smartphones. This is a definition that the U.S. Supreme Court has refused to adopt in connection with the TCPA's ATDS definition, instead finding that an ATDS includes only systems that uses a random or sequential number generator. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1171 (2021) ("classifying almost all modern cell phones as autodialers, would…make[] even less sense").

Again, Plaintiff's citation to other federal district courts analyzing vagueness challenges to the "ATDS" provision in the TCPA is misguided. *See* Opp. at 16-18 *(citing Wilson v. PL Phase One Opers. L.P.*, 422 F. Supp. 3d (D. Md. 2019) and *Smith v. Truman Rd. Dev., LLC,* 414 F. Supp.

3d 1205, 1239 (W.D. Mo. 2019)). As previously discussed, the TCPA's definition of an ATDS is presumptively *not* synonymous with Florida's definition of an "automated system." Therefore, Plaintiff's citations to cases addressing vagueness challenges to the TCPA have little to no bearing.

Plaintiff further complains that "rather than discuss its own software, Defendant hypothesizes examples that might fall within the statutory scope." Opp. at 17. Plaintiff seems to ignore that E11EVEN cannot discuss its own software at this juncture because Plaintiff failed to allege any actual facts about E11EVEN's software in the first place. If Plaintiff believes that E11EVEN's software so clearly falls within Florida's definition of an "automated system"— regardless of specifically how that term is ultimately defined—his Complaint does not explain how or why. Moreover, and contrary to Plaintiff's assertion, E11EVEN is not "hypothesizing" situations that may or may not fall within the statutory scope. Given the sincere ambiguity present in the FTSA, E11EVEN is genuinely in the dark as to whether it sent text messages that are subject to the requirements of the FTSA, as amended last July.

At its core, the vagueness doctrine is a question of constitutional notice of unlawfulness, as understood by a "person of ordinary intelligence." *U.S. v. Single Family Residence & Real Prop.*, 803 F. 2d 625, 630 (11th Cir. 1986). A law must provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Id*. The language of a statute must convey a "sufficiently definite warning as to the proscribed conduct when measured by common understanding." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1368 (N.D. Ga. 2015). Just because Plaintiff believes he has a clear understanding of what an "automated system" is does not make that definition reasonably clear, nor does it permit Plaintiff to impose that definition on E11EVEN. The question is not what this Plaintiff believes an "automated system" is, but rather whether a reasonable person could define that term and understand what sort of system is prohibited. Here, no reasonable person, including E11EVEN, would know what qualifies as an "automated system." The lack of any guidance and definite notice or warning permits exactly the type of arbitrary and discriminatory enforcement of the FTSA that constitutional vagueness guarantees are designed to prohibit. Thus, Section 8(a) of the FTSA is unconstitutionally vague.

    **B.**    **Section 8(a) of the FTSA Violates the First Amendment Under Strict or Intermediate Scrutiny**

Regardless of the standard of scrutiny applied, the FTSA is an unconstitutional content-based restraint on speech. First, Plaintiff is mistaken that Supreme Court precedent makes clear

4

that restrictions on commercial speech are subject to intermediate scrutiny, even if they are content-based. Opp. at 5-6. At best, the interplay between restrictions on commercial speech (which are ordinarily subject to intermediate scrutiny) and content-based restrictions (which are ordinarily subject to strict scrutiny) is an open question. Plaintiff is correct that neither *Reed*, 576 U.S. 155 (2015), nor *Barr*, 140 S. Ct. 2335 (2020), altered the traditional framework for analyzing restrictions on commercial speech or content-based speech. But at the same time, the Supreme Court declined to hold that restrictions which are both content-based and restrict commercial speech are always subject to intermediate scrutiny. Indeed, the Eleventh Circuit has acknowledged the potential confusion arising from cases like *Reed* and how a content-based restriction should be scrutinized where the restriction is also on commercial speech. *Ocheesee Creamery LLC v. Putnam*, 851 F. 3d 1228, 1235 n.7 (11th Cir. 2017) ("There is some question as to whether under the Supreme Court's decisions *in Sorrell v. IMS Health Inc*. and *Reed v. Town of Gilbert* an analysis to determine if the restriction is content based or speaker focused must precede any evaluation of the regulation based on traditional commercial speech jurisprudence…")

Further, many of the cases cited by Plaintiff, including several Eleventh Circuit cases and this Court's recent decision in *Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*, No. 21-CIV-61493-RAR, 2022 U.S. Dist. LEXIS 89622, at *20 (S.D. Fla. May 18, 2022), do not grapple with a restriction on commercial speech that *also* discriminates among various classes of commercial speech within the statute. Even since *Reed*, numerous courts have applied strict scrutiny to laws discriminating against commercial speech based on content. *See*, *e.g.*, *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703 (6th Cir. 2020) ("[T]he intermediate-scrutiny standard applicable to commercial speech under *Central Hudson* . . . applies only to a speech regulation that is content neutral on its face."); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (applying strict scrutiny to loitering law prohibiting "selling something"); *Victory Processing, LLC v. Fox*, 937 F.3d 1218 (9th Cir. 2019) (applying strict scrutiny to Montana autodialer provision). *Dana's R.R.* (and two other Eleventh Circuit cases cited by Plaintiff), did not decide whether to apply strict or intermediate scrutiny. Plaintiff's other cases are inapposite because commercial speech was not at issue or the law was content-neutral.

In that regard, *Barr v. American Association of Political Consultants, Inc.* is instructive. 140 S. Ct. 2335 (2020). In *Barr*, the Supreme Court found that the TCPA's autodialer provision was subject to strict scrutiny, *even though it was a restriction on commercial speech*, because of

5

the statute's preferential treatment of government debt collection calls above all other types of commercial speech. *Barr*, 140 S. Ct. at 2347. The *Barr* Court explained: "Under §227(b)(1)(A)(iii), the legality of a robocall turns on whether it is 'made solely to collect a debt owed to or guaranteed by the United States.' A robocall that says, 'Please pay your government debt' is legal. A robocall that says, 'Please donate to our political campaign' is illegal. That is about as content-based as it gets." *Id* at 2346. The Court in *Barr* applied strict scrutiny to the TCPA autodialer provision, even though it restricted only commercial speech, precisely because the law also discriminated based on the content of the speech. Indeed, the Court has held that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Barr* at 2347 (2020); *Reed*, 576 U. S., at 170 (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U. S. 622, 658 (1994)).

   The FTSA suffers from this exact problem. The FTSA also discriminates based on viewpoints by giving preferential treatment to debt collection calls (Fla. Stat. § 501.059(1)(k)(2)), and calls made by a newspaper publisher in connection with its business (§ 501.059(1)(k)(4)). While those calls are not subject to the FTSA, every other type of telephonic sales call is. In other words, an "automated system" may be used to send a bill collection reminder, but not to sell concert tickets. And because the FTSA only targets commercial speech, a text message to Plaintiff promoting a concert for charity would be acceptable under the FTSA, while the exact same text message promoting the exact same concert but for a for-profit live music venue would violate the Act. Under *Barr*, even though the law targets commercial speech, the FTSA is nonetheless subject to strict scrutiny because of its content- and speaker-based preferences. Just as the Vermont law at issue in *Sorrell*, the FTSA "does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers." *Barr*, 140 S. Ct. at 2347.

   The Fourth Circuit similarly reviewed South Carolina's analogous telephone solicitation statute under strict scrutiny and held that it was an impermissible content-based regulation. *Cahaly v. Larosa*, 796 F.3d 399, 402 (4th Cir. 2015). That statute banned "robocalls" with three exceptions: "(1) in response to an express request of the person called; (2) when primarily connected with an existing debt or contract, payment or performance of which has not been completed at the time of the call; (3) in response to a person with whom the telephone solicitor has an existing business relationship or has had a previous business relationship." S.C. Code Ann. § 16-17-446(B). This language is nearly identical to the FTSA exemptions for certain categories

of calls. *Comp.* Fla. Stat. § 501.059(1)(k)(1-3). Applying *Reed*, which holds that "regulation of speech is content based if a law applies … because of the topic discussed or the idea or message expressed, " the Fourth Circuit found that the statute is content based because it makes content distinctions on its face and applies to calls with a consumer or political message but not calls made for any other purpose. *Cahaly*, 796. F.3d at 405-406 (internal citations omitted). The Court could not find "that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest" with no "less restrictive alternative [that c]ould serve the government's purpose." *See id*. at 405. Instead, the state "failed to prove" the law was "narrowly tailored to serve" a compelling interest and that plausible less restrictive alternatives existed (including time-of-day limitations, mandatory disclosure of a caller's identity, and do-not-call lists), and the statute was under-inclusive because it restricted two types of robocalls—political and consumer—but permitted an "unlimited proliferation" of all other call types. *Id*. at 406 (citing *Reed*, 135 S. Ct. at 2231).

The Ninth Circuit's decision in *Victory Processing* is also helpful. 937 F.3d 1218 (9th Cir. 2019). That Court also applied strict scrutiny in striking down Montana's analogous telephone solicitation law, which regulated "automated telephone systems." The Ninth Circuit found the law not narrowly tailored to further the state's interest in protecting privacy. Notably, according to the Montana Legislature, the privacy threat posed by robocalls relates to the methods or effects of robocalls—the fact that they tie up phone lines and fill answering machines—rather than their content. *Victory Processing*, 937 F.3d at 1228. Accordingly, the Ninth Circuit held that regulating robocalls based on their content did not address Montana's expressed concerns. *Id.*

The same is true here. Whether strict or intermediate scrutiny applies to the FTSA is, at best, an open question. At least two federal appellate courts have applied strict scrutiny to nearly analogous statutes. *See Cahaly*, 796 F.3d 399 (4th Cir. 2015) and *Victory Processing*, 937 F.3d 1218 (9th Cir. 2019). The FTSA suffers from the exact defects identified by the Fourth and Ninth Circuits. The FTSA discriminates based on content by favoring non-commercial (over commercial) speech. It also favors some types of commercial speech over others by exempting calls related to debt collection or political activity. Just as with the Montana and South Carolina statutes, the FTSA is not narrowly tailored to protect consumer privacy. The law leaves open the possibility for consumers to receive all sorts of harassing or unwanted automated calls. And to the extent the state's interest is in the *privacy* of its citizens, the privacy invasion occurs the moment

the individual receives an unwanted robocall, completely irrespective of the actual content of the message. Regulating the content of an automated call does not remediate this privacy concern.

Even if intermediate scrutiny applied, Plaintiff fails to show how the FTSA survives under the *Central Hudson* test, as articulated in *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1249 (11th Cir. 2015). Under *Central Hudson's* second prong, the State must demonstrate that the challenged regulation "advances the Government's interest 'in a direct and material way.'" *Rubin* v. *Coors Brewing Co.,* 514 U.S. 476, 487, 131 L. Ed. 2d 532, 115 S. Ct. 1585 (1995) (quotation omitted). That burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them *to a material degree*." *Florida Bar v. Went For It*, 515 U.S. 618, 625-26 (1995) (emphasis added). Yet, Plaintiff and the Florida Legislature identify only a generalized interest in consumer privacy, which is an interest criticized as "formulated too abstractly to provide a meaningful benchmark for weighing the [FTSA] against the State's purported interest. " *Dana's R.R*. at 1249 (rejecting generalized interest in consumer protection to justify content-based regulation of commercial speech and rejecting more specific attempted articulations as "shifting sand"). Plaintiff asserts that Florida responded to over 293,000 complaints about robocalls by amending the FTSA to "protect Florida consumers from the void that had been left in the federal statute by recent developments in the law." Opp. at 8-9. But the FTSA amendments—the creation of a private right of action and added heightened consent requirements—have nothing to do with the underlying content discrimination. The reasons for these amendments therefore cannot serve as the interest justifying the restriction on protected expression. *Dana's R.R*., 807 F.3d at 1249.

Neither Plaintiff nor the Florida Legislature (in its Bill analyses) demonstrates how the FTSA materially advances the asserted interest of protecting consumers from unwanted calls. *See* Opp. Exh. A (ECF No. 1601) at 2. For example, debt collection and fraudulent calls are the most prevalent unwanted calls, yet the FTSA "leaves consumers open to an 'unlimited proliferation' of" calls on these topics. *See Victory Processing*, 937 F.3d at 1229 (scam calls are "40% of robocalls"); *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074 (2016) (the FTC received more debt collection complaints "than any other industry or practice"). Not only does the statute suffer from problems of under- and over-inclusivity, it does not even materially restrict debt collection calls, which as the Ninth Circuit points out, are the most

prevalent, unwanted types of robocalls. If Florida's interest is in protecting consumers from unwanted robocalls, the FTSA does nothing to curb its biggest culprit.

This Court must view Section 8 of the FTSA under strict scrutiny, where the government must meet its burden to prove that the law is narrowly tailored to serve the state's compelling interest. The FTSA fails that test. It fails under intermediate scrutiny as well because a generalized interest in privacy is insufficient to outweigh a content-based restriction on speech, including commercial speech. The result is a statute that is both under- and over-inclusive, needlessly regulates the content of a supposed privacy invasion, and does nothing to address the biggest alleged violations. This effects an unconstitutional infringement on First Amendment rights.

**C.     As Applied, The FTSA is a Violation of the Contract Clause**

As set forth in the Motion, the pertinent Section of the FTSA has the impermissible effect of nullifying a 2019 agreement between Plaintiff and E11EVEN, violating the Contracts Clause of the Florida and U.S. Constitutions. *See* Motion at 17-19. In March 2019, Plaintiff provided E11EVEN with written consent to text him event invites and offers in exchange for Plaintiff's entry into a sweepstakes. *See id.*, *see also* Terms & Conditions (ECF No. 12-1), at ¶¶ 7-8  However, the 2021 amendment to the FTSA imposes new, and more burdensome, requirements necessary to obtain a recipient's "prior express written consent" than those contained in the 2019 agreement, impairing the 2019 agreement to the point of a nullity.

The Opposition does not address this argument in any meaningful way. Nor does Plaintiff deny his entry into the 2019 agreement or the authenticity of the document, which clearly provided consent for E11EVEN to send the text messages at issue. Instead, Plaintiff makes a technical argument that there is nothing in the Complaint or in the record establishing that Plaintiff entered any contract with E11EVEN which provided Plaintiff's consent to receive text messages. Opp. at 20. While Plaintiff is correct that, at the motion to dismiss stage, all well-pled facts are considered true, the Court need not sanction Plaintiff's choice to ignore his agreement to opt-in to text messages from E11EVEN. While Plaintiff omitted the 2019 Terms and Conditions from the Complaint, it appears in the record. *See* ECF 12-1. A document outside the four corners of the complaint may still be considered on a motion to dismiss if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *Turizo v. Jiffy Lube International, Inc.*, 2019 WL 4737696, at *1 (S.D. Fla. Sept. 27, 2019) (Bloom, J.) (citing *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F. 3d 1337, 1340 (11th Cir. 2005)). Indeed, in *Turizo*, this Court stated in a footnote that it would have

considered an invoice which one of the defendants attached to its reply to its motion to dismiss, but for the fact that the invoice was not "central to [plaintiff's] TCPA claim." *Turizo*, 2019 WL 4737696, at *3 (also taking issue with the fact that the defendant did not file the invoice with the original motion to dismiss (as E11EVEN did) and instead attached it only to the reply).  Here, the Terms and Conditions agreement is central to the case. Indeed, the agreement is the basis of E11EVEN's Contract Clause defense, and a critical constitutionality concern raised by E11EVEN regarding Plaintiff's ability to validly raise his FTSA claim. The Terms & Conditions are central to Plaintiff's claims and Defendant's constitutional defense and this Court should not hesitate to consider it in deciding this Motion to Dismiss.[1]

## Conclusion

Count II should be dismissed with prejudice because Plaintiff merely paraphrases the statutory FTSA elements and does not illuminate any facts to support the conclusory allegation that E11EVEN used an "automated system" to text Plaintiff. Plaintiff's FTSA claim is also defective because Section 8(a), under which Plaintiff brings his claim, is (1) impermissibly vague in violation of due process guarantees, (2) an unlawful content-based restriction which fails both strict and intermediate scrutiny under the First Amendment, and (3) a law enacted in 2021 that effectively rewrites and nullifies the parties' 2019 agreement, violating the Contracts Clause of the Florida and U.S. Constitutions.

**WHEREFORE**, Defendant GR OPCO, LLC d/b/a E11EVEN MIAMI respectfully requests this Honorable Court enter an order granting the Motion, dismissing the Class Action Complaint with prejudice, and awarding any further relief this Court deems reasonable and just.

Date: June 7, 2022                              Respectfully submitted,

/s/ *Stacy J. Rodriguez*
Stacy J. Rodriguez (Florida Bar No. 44109)
ACTUATE LAW, LLC
641 W. Lake Street, 5th Floor
Chicago, Illinois 60661

---

[1] Should the Court reject the other dispositive arguments directed to the FTSA claim, and determine that additional information is required to resolve this argument, E11EVEN requests that the parties engage in limited discovery regarding Plaintiff's entry into the 2019 agreement, and then supplement briefing on this sole issue. Because this is a potentially case-dispositive argument—the FTSA claim being the sole remaining claim in the case—it would serve the interests of justice and judicial economy, and preserve the parties' resources to address this issue now, while staying other aspects of the case.

Tel: (312) 579-3108; Fax: (312) 579-3131
E-mail: stacy.rodriguez@actuatelaw.com

/s/ *Jeremy A. Kogan*
Jeremy A. Kogan (appearing *pro hac vice*)
Pedersen & Houpt
161 N. Clark Street, 27th Floor
Chicago, Illinois 60601
Tel: (312) 641-6888
E-mail: jkogan@pedersenhoupt.com

*Counsel for GR OPCO, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all other counsel of record or *pro se* parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Stacy J. Rodriguez*
Stacy J. Rodriguez

## SERVICE LIST

| | |
|---|---|
| Andrew J. Shamis, Esq. | Scott Edelsberg, Esq. |
| ashamis@shamisgentile.com | scott@edelsberglaw.com |
| Garrett O. Berg, Esq. | Christopher Gold, Esq. |
| gberg@shamisgentile.com | chris@edelsberglaw.com |
| SHAMIS & GENTILE P.A. | EDELSBERG LAW, P.A. |
| 14 NE 1st Avenue, Suite 705 | 20900 NE 30th Avenue, Suite 417 |
| Miami, FL 33132 | Aventura, FL 33180 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |